# Exhibit 25


**Dechert**
LLP

160 Queen Victoria Street
London EC4V 4QQ
UK
+44 (0) 20 7184 7000 Main
+44 (0) 20 7184 7001 Fax
DX 30 London
www.dechert.com

Quinn Emanuel Urquhart & Sullivan UK LLP
16 Old Bailey
London
EC4M 7EG

BY EMAIL AND POST

<u>Attn: Alex Gerbi / Sue Prevezer</u>

24 March 2011

Our Ref: 961036/388368

Dear Sirs

**Second Letter**

**Cherney v Deripaska (Claim No 2006 Folio 1218)**

We refer to your letters of 16 and 18 March 2011.

We confine ourselves to dealing with your specific queries concerning our client's disclosure and do not respond to comments contained in your letter.

<u>Your first letter of 11 February 2011</u>

So far as document seizures are concerned, the position is as follows:

The Liechtenstein authorities seized documents relating to Arufa Invest & Trade, CCT, Financial Assets and Investments Ltd, Furlan-Anstalt, Operator Trade Centre and Tenida-Anstalt. We are instructed by Kaiser Ritter that the authorities returned documents to Syndikus in 2003 though obviously we cannot be sure whether everything was returned or, if not, what was not returned.

The Swiss authorities seized documents from Joseph Karam. Our client only has access to such documents as have been disclosed in the Swiss proceedings and is unable to identify what documents were retained by the Swiss authorities but not disclosed in the Swiss proceedings. We are informed by our client's Swiss lawyers that there are approximately 100,000 pages of documents on the Swiss court file (marked 200,000 to 300,000) copies of which have not been supplied to us. We are advised by our client's Swiss lawyers that there is no index identifying exactly what these 100,000 pages comprise and that to obtain copies of them would cost in the region of CHF100,000.

In relation to seizures by the Israeli authorities, our client is unable now to identify those documents that were stored electronically on Mrs Skir's computers which were seized in 2001 and 2007 respectively. As explained in our previous correspondence those computers were inoperable when they were returned to Mrs Skir and they were disposed of. As to hard copy documents, we are instructed that the Israeli Public Prosecutor has not, to date, permitted our client access to all documents seized in 2001 and 2007. Our client is unable to identify

11337501

Dechert LLP is a limited liability partnership registered in England & Wales (Registered No. OC306029) and is regulated by the Solicitors Regulation Authority. A list of the names of the members of Dechert LLP (who are solicitors or registered foreign lawyers) is available for inspection at our registered office at the above address. Dechert practices as a limited liability partnership or limited liability company other than in Dublin and Luxembourg.

EUROPE Brussels Dublin London Luxembourg Moscow Munich Paris ASIA Beijing Hong Kong
US Austin Boston Charlotte Hartford New York Orange County Philadelphia Princeton San Francisco Silicon Valley Washington DC

2948


**Dechert**
LLP

Quinn Emanuel Urquhart &
Sullivan UK LLP
24 March 2011
Page 2

precisely what the seized documents comprise due to the fact that the authorities did not provide an itemised list of documents seized.

The Israeli Public Prosecutor has however, very recently, provided copies to our client's Israeli lawyers of a few of the documents previously confiscated. These documents will be reviewed and any documents falling within CPR 31.6 will be disclosed.

<u>Our letter of 17 February 2011</u>

10(ii)   We are awaiting a response from Mrs Skir's internet service provider. If and when documents are supplied by the ISP provider, we will review them and any documents falling within CPR 31.6 will of course be disclosed.

11.   You ignore the fact that the computers of Mrs Skir and Mr Ben-Tamar were purchased in 2007 and 2009 respectively. On that basis, and having regard to the searches already conducted, we fail to see what would be gained by conducting electronic searches of them. If you can explain why you think otherwise, given that these computers were purchased a number of years after your client and our client entered into Agreement No. 1 and Supplement No. 1, we will reconsider the position.

As for Batkov & Associates they are currently giving consideration to whether or not it is possible and, if so how, to accommodate your request.

In the meantime, we have obtained the following additional information which may be of interest to you concerning the computer records of Mr Batkov. First, Mr Batkov does not utilise a blackberry, PDA device or other external electronic document storage device. Second his work computer, which for the sake of convenience we have referred to as being his computer but which is in fact his secretary's computer, was purchased in 2009. The old computer was disposed of in about March 2009 but before disposal all data stored on it was transferred to a new computer.

So far as the searches conducted by Dr Weinroth & Co are concerned, if you read the first paragraph of point 11 of our letter, you will see that your query has already been answered.

13.3   Our client's position is that he does not own or control Blonde Management Corporation ("BMC") and cannot today require it to do anything (as is demonstrated below). It is possible that some time ago our client would have been successful in asking BMC to provide him with documents but our client's relationship with Mr Kislin is now such that our request to Mr Kislin to provide documents has gone unanswered. If and when documents are supplied by Mr Kislin, we will review them and any documents falling within CPR 31.6 will of course be disclosed.

13.7(b)   One of Mr Ben-Tamar's internet service providers has confirmed that it has not retained copies of emails and/or documents sent to or from Mr Ben-Tamar's email address. We await a response from the other internet service provider. If and when documents are supplied in response to our outstanding request, we will review them and any documents falling within CPR 31.6 will of course be disclosed.

<u>Alleged dolya payments/ payments under Agreement No 1.</u>

11337501


**Dechert**
LLP

Quinn Emanuel Urquhart &
Sullivan UK LLP
24 March 2011
Page 3

Your assertion that our client should give disclosure of documents referring to payments to other *"known representatives of organised crime groups"* is misconceived. Your client's case identifies only Anton Malvesky and Sergei Popov as being alleged representatives of organised crime groups with whom your client says that ours was involved in operating a protection racket.

Our client's disclosure includes such documents as are within his control which evidence the use to which (a) the monies received pursuant to Agreement No.1 and (b) the alleged dolya payments, were put by him. Furthermore, our client's disclosure also includes documents evidencing other transactions between the companies in which he was interested and the alleged dolya recipients identified in your client's further information.

<u>Correspondence with material third parties</u>

To the extent that documents exist evidencing communications between our client and either of the Malvesky brothers and Sergei Popov, or the entities in which our client believes them to have had an interest, they are being disclosed, subject of course to the confines of our client's disclosure statement.

<u>Your letter of 18 March 2011</u>

We are currently finalising our client's disclosure and anticipate being in a position to serve his disclosure statement early next week. At that time we will provide you with a final list of documents which contains cross references within the indices to the relevant file numbers.

In the meantime, you have been provided with our client's third tranche of disclosure documents under cover of our 1st letter of 24 March 2011.

Yours faithfully

*[signature]*
**Dechert LLP**

*Encl.*

11337501

2950