# Exhibit 52

## BLONDE MANAGEMENT AGREEMENT

PERSONAL SERVICES AGREEMENT made on _04th_ day of _April_ 1992 between _Mr. Michael Cherny_ hereinafter referred to as the _client_ and Blonde Management Corp.. (William Nolan, ESQ..) 703 Avenue U, Brooklyn, New York 11223.

1. APPOINTMENT AND AUTHORIZATION OF AGENCY. Management is hereby retained and appointed to represent the _client_ in carrying out his/her business in the United States. Management is authorized to enter into contracts with third parties to carry out the purposes of this Agreement. Management shall use its best efforts to prevent any loss to the _client_ from the failure of proper performance by any third party. Management, however, shall not be liable or responsible to the _client_ for any such failure.

2. AGENCY SERVICES. Management shall act as the _client's_ business representative and perform any or all of the following services to the extent necessary to meet the _client's_ needs:

   a) Arrange lodging.

   b) Provide entertainment.

   c) Provide translation services at meetings.

   d) Manage properties.

   e) Manage personal bank accounts.

   f) Negotiate contracts.

   g) Provide translation.

   h) Purchase and ship goods.

   I) Exercise banking transactions.

3. BILLING AND PAYMENT.

   a) *From*. Management shall bill the _client_ on Management's standard forms.

   b) *Due dates*. _Client_ shall pay bills not later than on the due dates stated therein.

   c) *Proof of expenditures*. _Client_ shall be entitled to proof of payment by Management of all sums expended on _client's_ behalf. _Client_ or his duly authorized representative shall

1

have the right to examine Management's books and records in regard to client's account at all reasonable times.

d) *Advances.* Management shall make all payments to third parties. However, Management reserves the right to discontinue making such payments if the *client* defaults inane payment to Management required by the terms of this Agreement.

e) *Compensation.* Compensation shall be paid by the *client* to Management on a monthly basis. The amount of compensation shall be based on the work performed from the first of the month to the last day of that month.

## 4. EXPENDITURES.

a) *Hotel expenditures. Client* shall reimburse Management for all costs incurred and expenditures made on *client's* behalf for the lodging accommodations of *client* clients.

b) *Shipping. Client* shall pay Management for its direct costs of mailing, packaging, shipping, taxes and duties, and telephone calls and telegrams incurred by Management in connection with the performance of this Agreement.

c) *Travel. Client* shall pay all of Management's costs for any necessary traveling done on behalf of the *client*.

## 5. TERMINATION.

a) *Termination; work in progress.* Either party may terminate this Agreement by giving the other party written notice at least 30 days prior to the effective date of termination. Upon receipt of notice of termination, Management shall not commence work on any new business but it shall complete all existing business matters on behalf of the *client*. All other rights and duties of the parties shall continue during such notice period and the *client* shall be responsible to Management for the payment of any contract obligation incurred with third parties during this period. If either Management or *client* desires to terminate all work in progress commenced before receipt of notice of termination, it may do so only upon the parties' mutual consent and the determination and payment of the compensation to be received by Management for partially completed work.

b) Assignment upon termination. Upon termination of this Agreement, Management shall assign to the *client* all of its rights in contracts, agreements, arrangements, or other transactions made with third parties for *client's* account, effective on the date of termination or on such other date as may be agreed upon by the parties. The *client* shall assume all obligations and indemnify and hold Management harmless from all liability thereunder. If any contract is nonassignable and consent to assignment is refused, or Management cannot obtain a release from its obligations, Management shall continue performance, and the *client* shall meet his obligations, as to the unassigned

2

or unreleased contracts only, to Management as though this Agreement had not been terminated.

c) *Termination billings.* Upon termination of this Agreement, Management shall bill the *client* for all amounts not previously billed and due Management at that time. Management shall not be entitle to payment for any work commenced after the date it received notice of termination. Management shall, however, be entitled to payment for services rendered and work performed for business commenced prior to receipt of the notice or, with the express written consent of the *client*, prior to the effective date of termination.

d) *Term of Agreement.* This agreement shall be terminable at will in the manner described in Article 5, Section (a) of this Agreement.

e) *Option to Renew.* *Client* may renew this Agreement on the same terms and conditions, except that Management may change the rates charged. *Client* shall give Management written notice of intention to renew this Agreement not less than 10 days prior to its termination date. *Client* may not renew this Agreement if he defaults in any payment to Management.

6. DISPOSITION OF MATERIALS.

a) *Payment and ownership.* All property and materials produced under this Agreement shall be the property of the *client* upon payment by the *client*. Upon termination of this Agreement, all such property and materials shall be the property of Management unless the *client* pays for them in accordance with the terms of this Agreement, even though the *client* or another party has physical possession of the particular item.

7. ARBITRATION. Any controversy or claim arising out of or relating to this Agreement, or its breach shall be settled by arbitration in the City of New York in accordance with the governing rules of the American Arbitration Association. Judgment upon the award rendered by the arbitration or arbitrators may be entered in any court of competent jurisdiction.

8. ASSIGNMENT AND DELEGATION. Neither party may assign any rights or delegate any duties hereunder without the other's express prior written consent.

9. MODIFICATION. This writing contains the entire agreement of the parties. No representations were made or relied upon by either party, other than those that are expressly set forth. No agent, employee, or other representative of either party is empowered to alter any term of this Agreement, unless done in writing and signed by an executive officer of the respective parties.

10. CONTROLLING LAW. The validity, interpretation and performance of this Agreement shall be controlled by and construed under the laws of the State of New York.

11. **WAIVER.** The failure of either party to this Agreement to object to or to take affirmative action with respect to any conduct of the other which is in violation of the terms of this Agreement shall not be construed as a waiver of the violation or breach, or of any future violation, breach or wrongful conduct.

12. **NOTICES.** All notices pertaining to this Agreement shall be in writing and transmitted either by personal hand delivery or through Federal Express, DHL or the United States Post Office. All notice shall be sent to the addresses set forth above for the respective parties, unless either gives written notice of a change of address.

13. **HEADINGS.** Headings in this Agreement are for convenience only and shall not be used to interpret or construe its provisions.

14. **BINDING EFFECT.** The provisions of this Agreement shall be binding upon and inure to the benefit of each of the parties and their respective successors and assigns.

Executed as of the dated first above written.

Corporate Seal

By _____          _____
        President

Blonde Management Group             Mr. Michael Cherny

4